UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELLE INGLE, an individual

       Plaintiff,

v.                                                                    Case No:  2:14-cv-544-FtM-38DNF

JOHN  JOSEPH  JANICK,  M.D.,  P.A.
and JOHN J. JANICK,

       Defendants.

                                   /

## ORDER[1]

This matter comes before the Court on the Defendants, Janick Medical Group and

Dr. John J. Janick's Motion to Dismiss (Doc. #6) filed on September 18, 2014, and the

Defendants, Janick Medical Group (JMG) and Dr. John J. Janick's Amended Motion to

Dismiss (Doc. #17) filed on October 17, 2014.  The Plaintiff filed a Motion to Strike or in

the Alternative a Response in Opposition to the Amended Motion to Dismiss (Doc. #20)

on October 20, 2014.  The Motion is fully briefed and ripe for the Court's review.

## FACTS

Ingle worked for the Defendants for over thirty (30) years and was employed as

the Defendants' office manager until April 3, 2014. (Doc. #1, ¶ 8).  Ingle states that

beginning in 2013, the Defendants began using non-credentialed ultrasound technicians

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

in order to trim costs. (Doc. #1, ¶¶10-11).  Ingle asserts that she objected to the practice because billing Medicare for ultrasound services that were performed by non-credentialed personnel is illegal under federal and state law. (Doc. #1, ¶¶ 12-13).

In response to her objections to the Defendants' practice of using non-credentialed operators, Ingle claims the Defendants subjected her to a hostile work environment. (Doc. #1, ¶¶ 14-15)  Ingle states that beginning in January 2014, the hostile work environment caused her to suffer serious medical and emotional complications which caused her to take sick leave from work. (Doc. #1, ¶ 15).  When Ingle was ready to return to work, she states that she asked the Defendants to cease the alleged fraudulent Medicare practices. (Doc. #1, ¶ 16).  Ingle says she informed the Defendants that unless they stopped using non-credentialed operators and then billing Medicare for the ultra-sounds she would not return to work. (Doc. #1, ¶ 16).  Ingle says she received no response to her inquiries regarding when she could return to work. (Doc. #1, ¶ 17).  Ingle states that since the Defendants would not inform her of when she could return to work she was forced to submit her resignation. (Doc. #1, ¶¶ 17-18).  As such, Ingle alleges her resignation was in fact a constructive discharged.

Ingle brought the instant case, alleging that JMG and Dr. Janick violated The False Claims Act 31 U.S.C. § 3730(h) (Counts I and II) and that the Defendants violated Florida's False Claim Act Fla. Stat. § 68.088 (Counts III and IV). In addition, Ingle claimed the Defendants violated Florida's Private Whistleblower Act, Fla. Stat. § 448.102(3) (Count V).

## STANDARD OF REVIEW

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. Christopher v Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). However, dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561- 563, S. Ct. 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) (aboragating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of actions elements. Bell Atlantic, 550 U.S. 544, 561- 563.

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. at 555; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, 556 U.S. 662, 78, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868 (2009). Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Sinaltrainal, 578 F. 3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). The facts as pled must state a claim

for relief that is plausible on its face. Sinaltrainal, 578 F. 3d at 1268 (citing Iqbal, 129 S. Ct. at 1950).  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Simplexgrinnell, L.P. v. Ghiran, 2007 WL 2480352 (M.D. Fla. August 29, 2007) (citing  Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford County, Georgia, 960 F.2d 1002, 1009-1010 (11th Cir. 1992).

## DISCUSSION

The Defendants argue that Ingle cannot bring the Complaint on her own behalf because *qui tam* actions filed by private citizens pursuant to 31 U.S.C. § 3730(b)(1) are required to be brought in the name of the United States government with the private individual as relator.  The Defendants further argue that *qui tam* actions are to be brought *in camera* and are to remain sealed for a minimum of sixty (60) days.  Ingle did not follow this procedure.  Finally, the Defendants argue that Ingle's Complaint does not contain sufficient specifics to allege fraud under Fed. R. Civ. P. 9.  Thus, the Defendants argue the case should be dismissed because Ingle failed to comply with the statute.

Ingle argues the Motion to Dismiss should be stricken under Fed. R. Civ. P. 12(g) because the Defendants filed an Amended Motion to Dismiss (Doc. #17) after reviewing Ingles response in opposition to their original motion to dismiss (Doc. #6).  In the alternative, Ingle states the Motion to Dismiss should be denied because she is bringing the action pursuant to 31 U.S.C. § 3730(h) for retaliation.  Thus, Ingle states the action does not have to be brought by the United States with her as the relator because the FCA provides relief for employees who have been discharged because of the possibility of litigation under the Act.

### *(1) <u>Whether the Motion to Dismiss Should be Stricken</u>*

Ingle argues the Defendants' Amended Motion to Dismiss must be stricken because the Federal Rules of Civil Procedure do not allow a defendant to file a second motion to dismiss without an Amended Complaint being filed by the Plaintiff.  Ingle argues any new defense which was not brought in the original motion but could have been brought is waived if said defense(s) was available at the time the original motion was filed. Federal Rule of Civil Procedure 12(g) states in pertinent part:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Thus, Ingle argues that the Amended Motion must be stricken because it raises new defenses which should have been available to the Defendants when they filed their first motion to dismiss because her Complaint was never amended.  Thus, Ingle states any arguments set forth in the Amended Motion to Dismiss should be considered waived under Rule 12(g).

Contrary to Ingle's position, the plain language of Rule 12(g) protects the defense of failure to state a claim from the risk of waiver.  Rule 12(g) provides for certain waiver exceptions found in Rule 12(h)(2).  Under Rule 12(h)(2) lack of subject matter jurisdiction, failure to state a claim (Rule 12(b)(6) motions), failure to join an indispensable party, and failure to state a cognizable defense are all preserved even if omitted from an original 12(b) motion.  Further, a defendant may amend a motion to dismiss pursuant to Fed. R. Civ. P. 15(a). *See* Fed. R. Civ. P 12(h)(1)(B)(ii).

In considering the amended motion, courts have examined whether the amendments request was filed before the Rule 12 motion was heard, the time interval between the original Rule 12 motion and the attempted correction, the moving party's good faith, and the likelihood that the omission was intentional and tactical, or merely inadvertent. *See* Thomas v. Bank, 2009 WL 481349, *1 (M.D. Ga. February 25, 2009); Steven Baicker-Mckee, William M. Janssen, and John B. Coor, Federal Civil Rules Handbook 2014, 498-99 (West, 2014).

Here the Defendants filed their Amended Motion to Dismiss prior to the original Motion being ruled on by the Court. The Amended Motion was filed approximately one month after the original motion to dismiss. Based upon the filings the Court does not find any evidence that the Amended Motion was filed to cause delay or as a tactical move to slow the progress of the case. Additionally, as a general rule, the Court prefers to resolve issues on the merits rather than on a technicality. Therefore, the Court will accept the Amended Motion to Dismiss and rule on the merits of the Motion. The Motion to Strike is denied.

### (2) *Whether Counts I and II State a Claim*

In Counts I and II, Ingle states the Defendants retaliated against her because she refused to partake in the alleged fraudulent billing of Medicare. The Defendants argue that Ingle cannot bring an action pursuant to the FCA because she did not set forth any facts which established a proper *qui tam* action under the FCA. Ingle argues that she did not bring the case as a *qui tam* action but as a whistle blower action under § 3730(h). As such Ingle contends that her Complaint is properly brought in her own name.

The False Claims Act is the primary statute upon which the United States Government relies on to recover losses caused by fraud perpetrated in the form of "false claims." *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (citation omitted). To encourage employees to report violations of the Act, a Whistleblower Provision grants employees the right to bring a retaliation claim against their employer if they are discriminated against in their employment because of their attempts to stop one (1) or more of the "false claims" enumerated under the Act. 31 U.S.C. § 3730(h) (2010). Employees enjoy this right even if they are not aware of the existence of the False Claims Act at the time they attempt to stop the false claim. *See* Childree v. UAP/GA CHEM, Inc., 92 F.3d 1140, 1146 (11th Cir. 1996), *cert. denied*, 519 U.S. 1148, 117 S. Ct. 1080, 137 L. Ed. 2d 216 (1997) ("[N]othing in the language of § 3730 suggests that its protections are limited to those who were motivated by it.").

In order to qualify for protection under the Whistleblower Provision, Ingle must illustrate (1) that she was engaged in protected conduct and (2) that the Defendants retaliated against her because of that protected conduct. Mack v. Augusta-Richmond Cnty, Ga., 148 F. App'x 894, 897 (11th Cir. 2005) (citation omitted). With regard to the first factor, absent an actual *qui tam* action by Ingle, the Court must evaluate whether Ingle engaged in protected conducted under the "distinct possibility" standard. *See* U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303-04 (11th Cir. 2010) (evaluating the plaintiff's claim of engaging in protected conduct under the "distinct possibility" standard when she did not file a *qui tam* action). Under this standard, Ingle's conduct constitutes "protected conduct" only if "there was at least 'a distinct possibility' of litigation under the False Claims Act at the time of the employee's actions." Id. at 1303 (citing

Childree, 92 F.3d at 1140).  In applying this standard, the Eleventh Circuit concluded that a plaintiff's "allegations that she complained about the defendants' 'unlawful actions' and warned them that they were 'incurring significant criminal and civil liability' . . . [was] sufficient, if proven, to support a reasonable conclusion that the defendants were aware of the possibility of litigation under the False Claims Act." Id. at 1304.

In this instance, Ingle specifically states that she complained to Dr. Janick about the improper filing of Medicare claims on several occasions. (Doc. #1, ¶¶ 11-14).  While it does not appear that Ingle specifically warned the Defendants that they could incur "significant criminal and civil liability," she made clear to the Defendants that their actions were contrary to state and federal law. (Doc. #1, ¶¶ 11-15).  Further, Ingle stated that before she could return to work, the Defendants must stop their alleged illegal Medicare billing practices.  (Doc. #1, ¶¶ 15-16).  Thus it is reasonable to conclude, based on the allegations in the Complaint, the Defendants were aware of the possibility of a claim being brought against them under the False Claims Act.

The Eleventh Circuit has explicitly held: "If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." Sanchez, 596 F.3d at 1304. Because Ingle's allegations, taken as true, are sufficient to support a reasonable conclusion that the Defendants could have feared being reported for the illegal misuse of Medicare funding, Ingle's Complaint sufficiently states a claim for retaliatory discharge under § 3730(h). *See, e.g.,* U.S. ex rel. Gatsiopoulos v. Kaplan Career Inst., Case No. 09-21720-CIV, 2010 WL 5392668, at *7 (S.D. Fla. Dec. 22, 2010)

(finding that the plaintiff stated a claim for retaliatory discharge under § 3730(h) under similar facts).

While the Defendants argue that Ingle failed to plead the specifics of the alleged fraud required by Fed. R. Civ. P. 9, Ingle is not alleging fraud. Instead, Ingle alleges the Defendants retaliated against her because they reasonably believed that a False Claims Act case could be brought against them. As such, Ingle's Complaint is sufficient. Sanchez, 596 F.3d at 1304. In view of the Eleventh Circuit's decision in Sanchez, the Motion to Dismiss Counts I and II is denied.

### (3) *Florida State Law Claims Counts III, IV and V*

The Defendants argue that since Ingle does not have a federal claim under the False Claims Act, the Court does not have supplement jurisdiction over Counts III, IV and V. Counts III and IV were brought pursuant to Florida's False Claim Act, Fla. Stat. § 68.088. Count V was brought pursuant to Florida's Whistle Blower Act, Fla. Stat. § 112.3187. However, contrary to the Defendants' argument, Ingle has stated—at this point in the case—a claim under the False Claims Act. Since the Court does maintain supplemental jurisdiction over Ingle's State Law claims, the Court will review Counts III, IV and V.

### (a) *Counts III and IV*

Similar to the federal False Claims Act, Florida's False Claim Act was enacted as the primary statute upon which the Florida state government relies on to recover losses caused by fraud perpetrated in the form of "false claims." Fla. Stat. § 68.088. Indeed, Florida's False Claims Act also provides protection to "[a]ny employee who is . . . demoted, suspended, threatened, harassed, or in any other manner discriminated against

in the terms and conditions" of their employment because of their attempts to stop a "false claim," as enumerated under the Act. Id.  But in contrast to the Whistleblower Provision of the federal False Claims Act, the Anti-Retaliation Provision of Florida's False Claims Act does not, in and of itself, provide a basis for a cause of action. Instead, Florida's Anti-Retaliation Provision alerts employees that if they were discriminated against in violation of the Provision, they have a cause of action under Florida's Private Whistleblower Act, Fla. Stat. § 112.3187.

Ingle states that she alerted the Defendants that their Medicare billing practices were a violation of both federal and state law.  Ingle alleges that after informing the Defendants that she would not participate in the alleged fraudulent billing practices she was demoted, harassed, and eventually terminated for her refusal to participate in the Defendants' Medicare billing practices. (Doc. #1, ¶¶ 87-92).  Thus, Ingle has stated a claim under Florida's False Claim Act and the Motion to Dismiss Counts III and IV is denied.

### *Count V*

Regarding Florida's Private Whistleblower Act, Ingle states that she informed the Defendants that she could not participate in their alleged false Medicare billing practices because she believed them to be illegal. (Doc. # 1, ¶ 89).  As a result of her refusal to participate in the Defendants' alleged Medicare scheme, Ingle states she suffered a negative employment action in the form of her constructive termination. (Doc. # 1, ¶ 86-90).

Florida's Private Whistleblower Act provides in pertinent part:

> [a]n employer may not take any retaliatory personnel action
> against an employee because the employee has: (3) Objected

to, or refused to participate in, any activity, policy, or practice
of the employer which is in violation of a law, or regulation.

Fla. Stat. § 448.102(3). Since Ingle alleges she was terminated because she informed the Defendants that their actions were illegal under the False Claim Act, she has sufficiently stated a claim under Florida's Private Whistleblower Act.

## CONCLUSION

Taking Ingle's allegations in her Complaint as true, a reasonable person could conclude that the Defendants could have feared being reported for submitting fraudulent Medicare claims under the False Claims Act. Further, Ingle's claims are sufficient at this point to establish a violation of Florida's False Claim Act and Florida's Private Whistleblower Act.

Accordingly, it is now **ORDERED:**

(1) The Defendants, Janick Medical Group and Dr. John J. Janick's Motion to Dismiss (Doc. #6) is **DENIED as moot**.

(2) The Defendants, Janick Medical Group and Dr. John J. Janick's Amended Motion to Dismiss (Doc. #17) is **DENIED**.

(3) The Plaintiff, Michelle Ingle's Motion to Strike the Defendants, Janick Medical Group and Dr. John J. Janick's Amended Motion to Dismiss (Doc. #20) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of November, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record